No. 118,672

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT KENTON POLLMAN JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

A challenge to a defendant's criminal history score may be raised for the first time on appeal under K.S.A. 22-3504 as a challenge to the legality of the sentence but not to collaterally attack a conviction.

2.

A defendant is permitted to plead to a nonexistent or hypothetical crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement.

3.

If a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to collaterally attack any underlying infirmity in the charge to which he or she pled.

4.

A judgment entered on a plea to a nonexistent crime may be based upon no objective state of facts, on a hypothetical crime, or on a hypothetical situation without objective basis.

5.

When the charging document alleges conduct that constitutes a crime and then the defendant voluntarily chooses to beneficially plea to a nonexistent offense, the court's jurisdiction is not lost simply because the result of the bargaining is a plea to a nonexistent offense.

6.

Under the circumstances of this case, defendant's conviction of a nonexistent crime is a verified conviction and is scored for criminal history purposes as an omitted, unranked, or unclassified felony.

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed May 10, 2019. Sentence vacated and case remanded for resentencing.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Brian R. Sherwood*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON and GARDNER, JJ.

GARDNER, J.:  Robert Kenton Pollman Jr. appeals the sentence imposed in 2017 for his conviction of attempted possession of methamphetamine. He claims the district court erroneously classified his 2011 conviction as a person felony in computing his criminal history. But Pollman's claim is no run-of-the-mill claim of an illegal sentence.

2

Instead, the parties agree that the crime to which Pollman pleaded and which was later classified as a prior felony for purposes of his criminal history did not exist.

We have repeatedly held that a defendant may plead to a nonexistent crime as part of a beneficial plea agreement so long as the defendant was initially brought into court on a valid pleading and voluntarily and knowingly entered into the plea agreement. That is what happened here. The question before us, which we have not previously determined, is how to classify a nonexistent crime for purposes of a defendant's criminal history score.

We reject Pollman's claim that his plea of guilty to a nonexistent offense was a nullity, finding a valid distinction between an attack on a conviction based on a nonexistent offense following a jury verdict and a nullity claim raised after a plea of guilty or no contest. Even though a jury verdict would not be sustainable, a plea presents an entirely different situation. We find Pollman's 2011 verified conviction should be scored as an omitted, unranked, or unclassified felony. The parties agree on appeal that Pollman's 2011 nonexistent offense was a nonperson offense. Because the district court scored it as a person felony instead of a nonperson felony, we vacate his sentence and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

In May 27, 2011, the State charged Pollman with discharging a firearm at an occupied building or vehicle and two counts of criminal damage to property. Specifically, the complaint/information charged in Count I that on May 15, 2011, Pollman intentionally discharged a firearm at an occupied motor vehicle—a 2008 Dodge pickup, occupied by Shawnda Conner, in violation of K.S.A. 21-4219(b), a severity level 7 person felony. Count II charged Pollman with criminal damage to property of $1,000 to less than $25,000, a severity level 9 nonperson felony. Count III charged Pollman with

3

criminal damage to Conner's property—shorts and/or suitcase, less than $1,000, a class B nonperson misdemeanor.

Pollman then entered a no-contest plea to discharge of a firearm at an unoccupied vehicle. K.S.A. 21-4219 prohibited criminal discharge of a firearm at an occupied building, at an unoccupied dwelling, or at an occupied vehicle and categorized all three as person felonies. That statute did not, however, prohibit criminal discharge of a firearm at an unoccupied vehicle. Pollman thus agreed to plead to a nonexistent offense.

We do not mean to suggest that Pollman's acts were lawful, as clearly they were not. Pollman's admitted act of shooting a firearm at an unoccupied vehicle could constitute a number of crimes, depending on facts not shown by our limited record. See, e.g., K.S.A. 2010 Supp. 21-4217(a)(1) (prohibiting discharge of any firearm on any land of another without permission); K.S.A. 2010 Supp. 21-4217(a)(2) (prohibiting discharge of any firearm upon or from any public road or right-of-way that adjoins land of another without permission). If nothing else, it constituted criminal damage to property. K.S.A. 21-3720 (prohibiting damaging another's property without consent).

Not surprisingly, no transcript of the 2011 plea hearing is included in the record on appeal from Pollman's 2017 conviction. As a result, we have no facts to show why the parties agreed to a plea to the amended charge of discharge of a firearm at an unoccupied vehicle. The parties could have erroneously believed that K.S.A. 21-4219 prohibited criminal discharge of a firearm at an unoccupied vehicle. That statute did, after all, prohibit criminal discharge of a firearm at an occupied building, at an unoccupied dwelling, and at an occupied vehicle. It seems more reasonable to believe that the parties made an error of law than that they intentionally agreed to fabricate a nonexistent crime out of whole cloth for Pollman's benefit. Why the parties agreed to this plea cannot now be determined. Either way, Pollman and the State agreed he would plead to a crime that did not exist.

4

Pursuant to the plea, the State dismissed the two counts of criminal damage to property. The district court categorized Pollman's nonexistent offense as a severity level 8 person felony and ordered Pollman to pay restitution in the amount of $4,278.72. The district court sentenced Pollman to 10 months in the custody of the Department of Corrections but granted him probation for 18 months for discharge of a firearm at an unoccupied vehicle. As far as we know, Pollman made no attempt to challenge his 2011 conviction until late in his current appeal arising from his 2017 sentence.

After a traffic stop on January 29, 2017, the State charged Pollman with possession of methamphetamine and driving on a suspended license. He eventually pleaded to attempted possession of methamphetamine. At his sentencing hearing the district court classified Pollman's criminal history score as a C, without objection, based partly on the nonexistent 2011 offense which the district court scored as a person felony. The court imposed a prison sentence of 24 months with 12 months of postrelease supervision for his 2017 crime.

Pollman appealed from his 2017 sentencing, contending that, for purposes of calculating his criminal history score in this case, the district court should have classified his nonexistent 2011 offense as a nonperson misdemeanor rather than as a person felony. His sole request was that the court vacate his sentence and remand for resentencing pursuant to the correct criminal history score of F. He argued that either by using the rule of lenity or by treating his 2011 conviction as an "unclassified crime," we should score his 2011 conviction as a nonperson misdemeanor.

During oral arguments, this court raised an issue the parties had not raised, questioning the validity of the 2011 conviction. The court permitted the parties to address that issue in supplemental briefs and they did so. Pollman then echoed the dissent's position that because his 2011 conviction was for a noncriminal act it was invalid or void for purposes of his criminal history.

5

*Preservation*

Pollman concedes that he did not raise any issue regarding his sentence in the district court, but he contends that it is properly considered by this court as an illegal sentence under K.S.A. 22-3504. An illegal sentence may be corrected at any time, even for the first time on appeal. *State v. McLinn*, 307 Kan. 307, 349, 409 P.3d 1 (2018). Kansas appellate courts have previously considered legal challenges to criminal history scores, like Pollman's, for the first time on appeal as challenges to the legality of the sentences. See *State v. Sturgis*, 307 Kan. 565, 572, 412 P.3d 997 (2018); *State v. Campbell*, 307 Kan. 130, 133, 407 P.3d 240 (2017). We do the same.

## SHOULD POLLMAN'S 2011 CONVICTION FOR A NONEXISTENT OFFENSE BE USED IN HIS CRIMINAL HISTORY SCORE?

We first examine whether Pollman's 2011 conviction for the nonexistent offense of discharging a firearm at an unoccupied vehicle should be used in his criminal history score. This requires us to examine Pollman's argument that his conviction is invalid because it was based on a nonexistent or hypothetical crime.

A.    *Pollman's 2011 conviction for a nonexistent offense was a conviction.*

Pollman initially stated that he was not challenging his underlying 2011 conviction. Instead, his brief recognized that his 2011 conviction was likely valid even though K.S.A. 21-4219 did not prohibit discharging a firearm at an unoccupied vehicle:

> "Nonetheless, the conviction is likely valid, and certainly not challenged here. Indeed, a defendant is permitted to plead to a nonexistent crime or hypothetical crime as part of a plea agreement, so long as the defendant [meets the three conditions stated in] *McPherson v. State*, 38 Kan. App. 2d 276, 285, 163 P.3d 1257 (2007)."

6

Pollman changed his position in his supplemental brief, contending that his 2011 conviction was invalid because it was based on a nonexistent or hypothetical crime so it could not be counted in his criminal history. But Pollman cannot use this appeal which solely challenges his 2017 sentencing to attack his 2011 conviction, as Pollman now invites us to do. "K.S.A. 22-3504 is not a vehicle for a collateral attack on a conviction." *State v. Williams*, 283 Kan. 492, 495-96, 153 P.3d 520 (2007) (citing *State v. Nash*, 281 Kan. 600, Syl. ¶ 2, 133 P.3d 836 [2006]). Our Supreme Court "has repeatedly stated that the relief available under K.S.A. 22-3504 is correction of a sentence, not reversal of a conviction." *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). The same is true here.

B.     *Pollman forfeited his right to attack the underlying infirmity in the charge to which he pleaded no contest.*

But even if Pollman's challenge here were distinctively different than the typical K.S.A. 22-3504 motion, Pollman has forfeited his right to attack the underlying infirmity in the charge to which he pleaded no contest. Pollman cannot consider his 2011 conviction to be valid for all purposes but his criminal history. The fact of his 2011 conviction has been established and cannot be collaterally attacked now, as the following cases establish.

*Kansas cases*

This issue has been addressed in a related context several times. The procedural posture of these cases differs from Pollman's but not significantly so. In *Spencer v. State*, 24 Kan. App. 2d 125, 126, 942 P.2d 646 (1997), *aff'd on other grounds* 264 Kan. 4, 954 P.2d 1088 (1998), we found, when reviewing the dismissal of a K.S.A. 60-1507 motion, that attempted aggravated assault was not a crime. Then, as now, our statutes provided that a crime was an act or omission defined by law and that no conduct constitutes a

crime in Kansas unless it is made criminal by statute. K.S.A. 21-3102; K.S.A. 21-3105. Yet we held that a defendant may plead to a nonexistent crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement. *Spencer*, 24 Kan. App. 2d at 129. We reached the conclusion that one could validly plead to a crime that "may not be logically or technically consistent" but which could be upheld, "because the defendant received the benefit of a bargain into which he freely entered." 24 Kan. App. 2d at 128-29. We further held that "if a defendant enters into a plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled." 24 Kan. App. 2d at 129. Our Supreme Court, on review, held that attempted aggravated assault was, in fact, a crime, so Spencer had not pleaded to a nonexistent crime. 264 Kan. at 5-6, 8. It thus did not reach the Court of Appeals' analysis.

In *Easterwood v. State*, 273 Kan. 361, 44 P.3d 1209, *cert. denied* 537 U.S. 951 (2002), the movant filed a K.S.A. 60-1507 motion arguing that his conviction should be overturned due to a then recent change in the felony-murder rule. But our Supreme Court held that Easterwood had knowingly waived his right to challenge his conviction at trial or through a direct appeal and pled guilty to obtain a favorable plea agreement, so he could not collaterally attack his conviction. 273 Kan. 361-62. Our Supreme Court acknowledged the Court of Appeals' holding in *Spencer* that a defendant could plead guilty to a nonexistent crime, yet it did not reject or disapprove of that analysis. 273 Kan. at 382. Instead, the *Easterwood* court focused on the effect of a plea. It affirmed Easterwood's convictions and refused to allow him to challenge a voluntary and knowing plea based on a later favorable ruling, concluding that Easterwood had invited the error to receive a favorable plea bargain. 273 Kan. at 383.

The Kansas Supreme Court then denied review on two other Kansas Court of Appeals cases that cited *Spencer* favorably for the proposition that a defendant may plead

8

to a nonexistent crime. *State v. Luthi*, No. 91,409, 2004 WL 2927742, at \*6 (Kan. App. 2004) (unpublished opinion) (motion to withdraw a plea), *rev. denied* 279 Kan. 1009 (2005); *Mills v. State*, No. 89,012, 2003 WL 22387749, at \*1 (Kan. App. 2003) (unpublished opinion) (K.S.A. 60-1507 motion), *rev. denied* 277 Kan. 924 (2004). *Luthi* also relied on *Spencer*'s holding that the defendant "'forfeits the right to attack the underlying infirmity in the charge to which he or she pled.'" 2004 WL 2927742, at \*6.

Then came *McPherson v. State*, 38 Kan. App. 2d 276, 163 P.3d 1257 (2007). McPherson had entered a plea bargain and pleaded no contest to one count of attempted second-degree unintentional murder—a crime that did not exist. McPherson filed a K.S.A. 60-1507 motion seeking to reverse his convictions arguing that his due process rights were violated by his conviction and sentence for a nonexistent crime. The district court denied McPherson's motion, holding that because McPherson was originally charged with a valid crime and benefitted from a favorable plea agreement, his plea was acceptable. The district court also concluded that McPherson forfeited any challenges to the infirmity of the crime by entering a knowing and voluntary plea.

On appeal, we reaffirmed *Spencer*, 24 Kan. App. 2d at 129, holding:

> "A defendant is permitted to plead to a nonexistent or hypothetical crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement." *McPherson*, 38 Kan. App. 2d 276, Syl. ¶ 2.

We found those three conditions to be met and concluded: "[I]f a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to attack any underlying infirmity in the charge to which he or she pled." 38 Kan. App. 2d at 284-85. The Kansas Supreme Court did not review *McPherson*.

9

We find *McPherson* to be well-reasoned and persuasive:

> "Although the practice of permitting plea agreements such as this one to stand may seem illogical at first glance, such agreements serve a legitimate purpose. Compromises have long been permitted by our courts. Criminal cases are resolved by plea bargains virtually every day. As long as due process requirements are met and the bargain is beneficial to the defendant that defendant cannot later validly collaterally attack either the plea or bargained-for sentence. To paraphrase the *Spencer* court, if a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled. 24 Kan. App. 2d at 129." 38 Kan. App. 2d at 285.

Similarly, in *State v. Flores*, 292 Kan. 257, 258-60, 252 P.3d 570 (2011), our Supreme Court upheld the denial of a motion to withdraw a plea where Flores conceded he received a "'beneficial plea agreement'" but nevertheless contended he pled to a nonexistent crime because the statutes did not include attempted voluntary manslaughter as an inherently dangerous felony. The State relied on *Spencer*, *Easterwood*, and *McPherson*. But once again, our Supreme Court found that the charge to which Flores ultimately pled—felony murder with an underlying felony of attempted voluntary manslaughter—was a crime. It did not reach our court's *Spencer* analysis. *Flores*, 292 Kan. at 260-61.

We recently applied *McPherson* in *State v. Moral*, No. 111,426, 2016 WL 463399, at *6 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1327 (2017). There, we found the district court properly accepted a factual basis for Moral's misdemeanor plea, even though it was inconsistent with the crime charged. "Because Moral accepted the benefit of his plea agreement knowingly and voluntarily, he cannot attack the factual basis for his conviction and sentence on appeal." 2016 WL 463399, at *7.

10

The above cases illustrate that we have repeatedly applied our court's *Spencer* analysis and that our Supreme Court has had several opportunities to disapprove *Spencer*'s analysis, yet it has never done so. We believe *Spencer*'s analysis is sound. The rationale in these cases may be based partly on an unspoken application of a species of judicial estoppel where a litigant cannot induce the court to take a position at one stage of the litigation when that position is beneficial to the litigant and then later invite the court to take an opposite position to obtain a different benefit or avoid a detriment. Or the cases may be based on a contractual benefit-of-the-bargain rationale which binds a defendant not only to the benefits of his or her plea bargain but also to its ensuing detriments. Whatever the rationale, our cases teach that Pollman could plead to a nonexistent crime as part of a plea agreement as long as he was initially brought into court on a valid pleading, received a beneficial plea agreement, and voluntarily and knowingly entered into the plea agreement. If those conditions are met, Pollman forfeited the right to attack the underlying infirmity in the charge to which he pleaded.

*Other jurisdictions*

Kansas is not an outlier in finding that a defendant can plead to a nonexistent crime and that by doing so the defendant forfeits any challenges to the infirmity of the crime. Guilty pleas to defective or nonexistent offenses have often been upheld where the defendant has entered the plea under a plea bargain agreement from which he received a substantial benefit, even though a jury conviction on the same charge could not stand. See, e.g., *People v. Myrieckes*, 315 Ill. App. 3d 478, 485, 734 N.E.2d 188 (2000) (holding it is not unlawful for the State and a defendant to enter into a guilty plea for a nonexistent crime so long as the defendant receives a benefit); *People v. Genes*, 58 Mich. App. 108, 109-12, 227 N.W.2d 241 (1975) (holding a defendant, charged with second-degree murder, who had entered a guilty plea to attempted manslaughter to "the benefit of his bargain" despite an assertion that "there [was] no such crime as attempted manslaughter"); *People v. Guishard*, 15 A.D.3d 731, 732, 789 N.Y.S.2d 332 (N.Y. App.

11

Div. 2005) (affirming plea conviction to attempted assault in the first degree although the crime was a "legal impossibility"); *People v. Barker*, 221 A.D.2d 1018, 635 N.Y.S.2d 383 (N.Y. App. Div. 1995) (affirming plea conviction to the "nonexistent crime" of attempted first-degree manslaughter, but noting that "a jury verdict convicting a person of that crime would be invalid").

The rationale used to sustain a guilty plea to a nonexistent offense is that the defendant receives the benefit of his bargain, as does the State. Such pleas are sustained because they are freely sought by a defendant and freely taken as part of a bargain which was struck for the defendant's benefit: "While there may be question whether a plea to attempted manslaughter is technically and logically consistent, such a plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit." *People v. Foster*, 19 N.Y.2d 150, 154, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967). "These courts recognize that it is often in the interest of defendants to 'plead to a nonexistent crime in satisfaction of an indictment charging a crime with a heavier penalty' and thereby avoid risking a conviction for the more serious crime even though a jury could not convict a defendant of a legally impossible crime. *People v. Martinez*, 81 N.Y.2d 810, 812, 595 N.Y.S.2d 376, 611 N.E.2d 277 (1993)." *Dale v. Holder*, 610 F.3d 294, 302-03 (5th Cir. 2010) (reviewing New York nonexistent crime cases).

*Other kinds of nonexistent crimes*

The issue of nonexistent crimes typically arises when a defendant is charged with an unintentional crime, such as involuntary manslaughter, then pleads to an attempted crime, thus requiring an intent to do an unintentional act. Those factual situations are legally impossible or logically inconsistent. But cases do not limit the application of the rule to attempted crimes or to certain kinds of nonexistent crimes. Instead, judgment

12

entered on the plea in such situations may be based upon no objective state of facts, on a hypothetical crime, or on a hypothetical situation without objective basis:

> "The judgment entered on the plea in such situations may be based upon no objective state of facts. It is often a hypothetical crime, and the procedure—authorized by statute—is justified for the reason that it is in substitution for a charge of crime of a more serious nature which has been charged but perhaps cannot be proved. . . . [H]is plea may relate to a hypothetical situation without objective basis . . . ." *People v. Griffin*, 7 N.Y.2d 511, 516, 199 N.Y.S.2d 674, 166 N.E.2d 684 (1960).

Pollman's 2011 offense was a nonexistent or hypothetical crime.

Whether the offense to which Pollman pleaded was nonexistent because it was a legal impossibility, a logical impossibility, or a factual impossibility matters not. See *Spencer*, 24 Kan. App. 2d at 127 ("'[H]is plea may relate to a *hypothetical situation without objective basis.*' 19 N.Y.2d at 154"); *People v. Castro*, 44 A.D.2d 808, 808, 356 N.Y.S.2d 49 (N.Y. App. Div. 1974) ("[A] defendant may plead to a crime which does not even exist and the plea is valid. Such a hypothetical crime has no elements, yet their absence does not affect the plea. [Citation omitted.]"), *aff'd* 37 N.Y.2d 818, 339 N.E.2d 620 (1975).

Crimes such as attempted involuntary manslaughter are logically inconsistent. But they are legally impossible only because, as defined by the Legislature, one cannot attempt to commit an unintentional crime. Pollman's crime of discharging a firearm at an unoccupied vehicle, although logically consistent and factually possible, was a legal impossibility for the same reason—it did not fall within the crime as defined by the Legislature.

The law tolerates a number of legal fictions in the context of pleas. See, e.g., *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)

(permitting a defendant to avoid the probability of a more severe sentence by pleading guilty to a crime for which the defendant claims to be innocent); *Moral*, 2016 WL 463399, at *7 (finding the district court properly accepted a factual basis for the plea, even though it was inconsistent with the crime charged); *State v. Robinson*, No. 90411, 2008-Ohio-3972, 2008 WL 3136602 (Ohio Ct. App. 2008) (noting manslaughter is not a lesser included offense of murder, but "'[i]t is, nevertheless, routinely used as a legal fiction for purposes of facilitating plea agreements.'") Permitting a defendant to plead to a nonexistent crime in certain circumstances is a similar legal fiction. Although we heartily encourage parties to plead to a lesser offense rather than to a nonexistent offense, we find no legal impediment to counting a conviction of a nonexistent offense in a defendant's criminal history if *Spencer*'s three requirements are met.

C. *We apply the* Spencer *factors.*

*Spencer* teaches that a defendant may plead to a nonexistent crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement. 24 Kan. App. 2d at 129. These elements are met here.

1. *Pollman pleaded to a nonexistent crime as part of a plea agreement.*

Pollman pleaded to a nonexistent crime as part of his plea agreement. This is established by the simple, uncontested fact that the Kansas Legislature has not defined as a crime the acts to which Pollman pleaded—discharging a firearm at an unoccupied vehicle. The offense to which Pollman pleaded is, in common parlance, a "nonexistent or hypothetical crime." But the terms are broad and their meaning is plain in encompassing all offenses not defined as a crime by the Legislature.

14

2.      *Pollman was initially brought into court on a valid pleading*.

Pollman does not allege that the complaint/information which originally charged him with crimes was invalid. Nonetheless, Pollman contends in his supplemental brief that the district court lacked jurisdiction to convict him of a nonexistent crime.

The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). So we consider this argument raised for the first time on appeal. A conviction obtained in a court without subject matter jurisdiction is void. 304 Kan. at 784. But Pollman does not want us to find his conviction void—instead he wants to retain the benefit of his bargain and asks us to consider his conviction invalid only for criminal history purposes.

For many years, our cases held that jurisdiction is acquired in a criminal case upon the filing of a complaint, indictment, or information. See *State v. Brown*, 280 Kan. 898, 901, 127 P.3d 257 (2006). In 2011, when Pollman was convicted of the nonexistent offense, we used an elements test:

> "'As long as the complaint, indictment, or information alleges the elements of the offense intended to be charged, sufficiently apprises the defendant of the facts he or she must be prepared to meet, and is specific enough to determine a subsequent plea of double jeopardy, the district court has subject matter jurisdiction. *State v. Sims*, 254 Kan. 1, 9, 862 P.2d 359 (1993).' 280 Kan. at 901." *State v. Edwards*, 281 Kan. 1334, 1338, 135 P.3d 1251 (2006).

But in 2016, the Kansas Supreme Court corrected that error, finding the Kansas Constitution is the source of a court's subject matter jurisdiction. *Dunn*, 304 Kan. at 811. Thus, the charging document does not establish subject matter jurisdiction for the court to hear a criminal charge—it merely invokes that jurisdiction. The charging document does not need to include all the essential elements of a charged offense and is now deemed

15

sufficient if it alleges facts which, if proven beyond a reasonable doubt, show the defendant has committed a crime in Kansas. 304 Kan. at 811.

Pollman appeared in the district court in 2011 to respond to three charges stated in his complaint/information: intentionally discharging a firearm at an occupied motor vehicle in violation of K.S.A. 21-4219(b); felony criminal damage to property $1,000 to less than $25,000; and misdemeanor criminal damage to property. Each count alleged a crime in Kansas, under either an elements test or a facts test. By filing this complaint/information in 2011, the State properly invoked the jurisdiction of the district court. Pollman did not then, nor does he now, question the jurisdiction of the district court over any charge in the complaint. He questions only the jurisdiction over the nonexistent offense to which he subsequently pleaded.

But when Pollman struck his plea bargain with the State, he did so knowing of all the crimes charged. These charges, over which the district court clearly had jurisdiction and which were unquestionably viable under the Kansas Criminal Code, were as much a part of the plea negotiations as was the offense to which Pollman actually pleaded. Moreover, as a result of the plea entered by Pollman, the State dismissed the remaining charges. So "the focus of the [district] [c]ourt's jurisdiction here cannot be limited to the validity of the [nonexistent] charge but must include the adjudication through the plea bargaining process of all charges pending against the defendant." *Downer v. State*, 543 A.2d 309, 312 (Del. 1988). Pollman has shown no authority for his argument that the district court somehow had jurisdiction to take his plea, dismiss the valid charges, and sentence him, yet it simultaneously lacked jurisdiction to convict him of the nonexistent offense to which he agreed.

Pollman cites *Dunn*, 304 Kan. at 787, for its reliance on *United States v. Peter*, 310 F.3d 709, 714-15 (11th Cir. 2002). *Peter* held that where an indictment failed to allege conduct that would constitute a federal crime, the district court lacked jurisdiction

16

to accept the resulting plea. But *Peter* applied "the rule of *Meacham*, that a district court lacks jurisdiction when an indictment alleges *only* a non-offense." (Emphasis added.) 310 F.3d at 715; see *United States v. St. Hubert*, 909 F.3d 335, 343 (11th Cir. 2018) (stating the *Peter* court decided that when an indictment alleges only a nonoffense "the district court has no jurisdiction to accept the guilty plea"). In contrast, Pollman's charging document did not allege only nonoffenses.

*Dunn* said nothing different:

"'[T]here is no jurisdictional defect when the "indictment fail[s] to allege an element of the charged offense," but there is one when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute.' 752 F.3d at 1352 (quoting *Peter*, 310 F.3d at 714)." 304 Kan. at 787.

We agree. As *Dunn* confirms, had the State initially presented the district court with a complaint/information that did not charge any crime, the charging document would not have invoked the district court's jurisdiction. See K.S.A. 2010 Supp. 22-3502 (arrest of judgment available if charging document does not charge crime or court without jurisdiction); *Spencer*, 24 Kan. App. 2d at 128-29. But that is not what happened here. Pollman's 2011 charging document did not allege any nonoffense but instead alleged only crimes defined by the Kansas Legislature.

No jurisdictional problem is created when, as here, the charging document alleges conduct that constitutes a crime, then the defendant later chooses to beneficially plea to a nonexistent offense. *Spencer*, 24 Kan. App. 2d at 129 (finding district court had jurisdiction to accept Spencer's guilty plea to a nonexistent crime because Spencer was originally charged with a valid crime). "[T]he court's jurisdiction is not lost simply because the result of the bargaining is a plea to a nonexistent offense." *Downer*, 543 A.2d

17

at 312. The fundamental authority of the court to accept the result of Pollman's bargain with the State remained intact.

Because the State was not legally precluded from obtaining a valid conviction based on one of the originally charged offenses, the district court had jurisdiction over all charges pending against Pollman, including the related charges disposed of through his guilty plea.

3.    *Pollman received a beneficial plea agreement.*

Pollman does not contend that his plea agreement was not beneficial. In fact, he appears to recognize the benefit of his bargain, as he has not moved to withdraw his plea or reverse his conviction. At the time of the plea, Pollman was charged with one count of intentionally discharging a firearm at an occupied motor vehicle, in violation of K.S.A. 21-4219(b), a severity level 7 person felony; one count of criminal damage to property of $1,000 to less than $25,000, a severity level 9 nonperson felony; and one count of criminal damage to property less than $1,000, a class B nonperson misdemeanor. By Pollman's plea, the district court classified the reduced charge of discharging a firearm at an unoccupied vehicle as a severity level 8 felony. It removed the State's opportunity to prove a level 7 felony and dismissed the severity level 9 felony and the class B misdemeanor. By taking the plea to the nonexistent offense, Pollman reduced his sentence to 10 months. The record confirms that Pollman received a beneficial plea agreement.

4.    *Pollman voluntarily and knowingly entered into the plea agreement.*

Pollman does not challenge the knowing and voluntary nature of his plea. Although the record contains no transcript from the 2011 plea hearing, it does include the journal entry of the arraignment/plea hearing, which includes a summary of the parties'

18

agreement. That summary evidences a thorough colloquy between the court and Pollman about Pollman's rights, what he understood, and what he was waiving—this complied with procedural due process. See *State v. Moody,* 282 Kan. 181, 194, 144 P.3d 612 (2006) (noting K.S.A. 2005 Supp. 22-3210 embodies due process requirements articulated in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 [1969]).

The journal entry of the plea hearing strongly implies that Pollman was informed that the amended charge constituted a severity level 8 felony. The journal entry indicates that Pollman was advised of the charges and possible penalties. He was advised of the right to a preliminary examination hearing and that the purpose of such hearing was to determine whether a felony had been committed and whether there was probable cause to believe he committed the felony. Pollman was given a copy of the amended complaint, which presumably designated the amended charge as a severity level 8 person felony.

Before accepting the plea, the district court informed Pollman of his rights, including his rights to a jury trial; to have an attorney represent him at every stage of the proceeding; to confront and cross-examine the State's witnesses; to present witnesses of his own and compel their attendance if necessary; to testify if he desired; and to expect that the State will have to carry its burden of proof beyond a reasonable doubt. Pollman indicated that he understood those rights and had consulted with his attorney about them.

The district court then questioned the defendant about his plea. Pollman stated that he understood the terms of the bargain; had adequate time to discuss the bargain with his attorney and any questions had been answered; had in no way been forced, coerced, or threatened to take the bargain; saw benefit from the bargain; understood that he was giving up his right to trial and most of the rights of appeal; understood that the court was not bound by the bargain or recommendations as to sentencing, leniency, probation, or parole; and had not been promised that the court would be lenient or grant probation or parole. The district court then found that the plea bargain was knowingly and voluntarily

19

entered into by the defendant. The record thus confirms that Pollman's plea was knowing and voluntary.

Pollman is permitted to plead to a nonexistent crime as part of a plea agreement because he was initially brought into court on a valid pleading, he received a beneficial plea agreement, and he voluntarily and knowingly entered into the plea agreement. See *Spencer*, 24 Kan. App. 2d at 129. Because Pollman entered into a beneficial plea agreement voluntarily and intelligently, he forfeited the right to collaterally attack any underlying infirmity in the charge to which he pled. See *McPherson*, 38 Kan. App. 2d 276, Syl. ¶ 3. His conviction for discharging a firearm at an unoccupied vehicle stands.

WAS POLLMAN'S NONEXISTENT OFFENSE PROPERLY SCORED FOR PURPOSES OF CRIMINAL HISTORY?

We next determine how to score a nonexistent offense for purposes of criminal history. We look to the Kansas sentencing guidelines.

Pollman argues that the sentence for his 2017 conviction failed to conform to statute, specifically in the classification of his criminal history.

The legality of a sentence under the Kansas Sentencing Guidelines Act involves statutory interpretation, which constitutes a question of law subject to plenary appellate review. See *State v. Clapp*, 308 Kan. 976, 980, 425 P.3d 605 (2018); *State v. Redick*, 307 Kan. 797, 807, 414 P.3d 1207 (2018). A felony sentence under the Kansas Sentencing Guidelines Act is calculated by properly classifying the severity level of the crime and the defendant's criminal history score. *State v. Lee*, 306 Kan. 624, 625, 395 P.3d 418 (2017).

20

A.      *The general rule requires all convictions to be counted.*

We begin with the general rule, set forth in K.S.A. 2016 Supp. 21-6810(c), that "[e]xcept as otherwise provided, all convictions, whether sentenced consecutively or concurrently, shall be counted separately in the offender's criminal history." As the above discussion concludes, Pollman's 2011 conviction should be counted in his criminal history.

B.      *Pollman's 2011 conviction is not among the exclusive statutory exceptions.*

The statute lists in K.S.A. 2016 Supp. 21-6810(d) the possible exceptions to the general rule that all convictions count. For example, subsection (d)(8) provides that convictions under a statute later deemed to be unconstitutional are not scored in criminal history; subsection (d)(9) provides that convictions under a subsequently repealed statute are scored in criminal history. None of the exceptions provided in K.S.A. 2016 Supp. 21-6810(d) excludes a nonexistent crime from calculation in an offender's criminal history, or otherwise excludes Pollman's 2011 conviction. The statute underscores the general rule by reciting it again after the possible list of exclusions, stating "[e]xcept as otherwise provided, all other prior convictions will be considered and scored." K.S.A. 2016 Supp. 21-6810(d)(9). The Legislature's intent could not be clearer. These statutory exceptions are exclusive. The KSGA requires us to count in one's criminal history any conviction not excepted by statute. Pollman's conviction was not excepted by statute, so it must be counted.

1.      *Pollman's 2011 conviction was a verified conviction.*

K.S.A. 2016 Supp. 21-6810(d)(1) states: "Only verified convictions will be considered and scored." If a conviction is verified and is not excluded by exceptions to the general rule, we must count it in a defendant's criminal history. Conversely, if a

21

conviction is not verified, it cannot be counted. This statute reflects legislative intent that we do not look beyond the fact of verification when determining the validity of a conviction for purposes of criminal history. That rule has much to commend it.

A verified conviction is a conviction reflected in a journal entry or similar official court documents. See K.S.A. 2016 Supp. 21-6813(b)(5) (stating that convictions may be verified through "journal entries or other documents"); *State v. Schow*, 287 Kan. 529, 536, 197 P.3d 825 (2008); *United States v. Allen*, No. 99-4024, 1999 WL 672312 (10th Cir. 1999) (unpublished opinion) (finding the district court erred by relying on the presentence report's listing of an unverified conviction which stated that "'court and police information have been requested but not received'"); cf. *State v. Prater*, 31 Kan. App. 2d 388, 392-94, 65 P.3d 1048 (2003) (finding the district court properly included attempted aggravated arson in Prater's criminal history score even though he had not yet been formally convicted of that charge by the district court after remand by the Kansas Court of Appeals, because the appellate court's mandate ordering the district court to enter a conviction of that crime had the effect of a verified conviction).

Pollman's 2011 conviction for discharge of a firearm at an unoccupied vehicle is reflected in his 2011 journal entry, which also reflects the dismissal of two counts of criminal damage to property. The district court categorized Pollman's criminal discharge offense as a severity level 8 person felony, ordered restitution in the amount of $4,278.72, and imposed a 10-month sentence for Pollman's agreed offense. Because his conviction for the nonexistent offense is included in the journal entry, it is a verified conviction. Verified convictions are to be considered and scored. See K.S.A. 2016 Supp. 21-6810(d)(1). This subsection, independently of *Spencer* and its line of cases, requires us to count Pollman's conviction in his criminal history.

## 2. *Pollman's 2011 conviction was an unclassified felony.*

In Kansas, crimes are designated felony or misdemeanor (or traffic or cigarette or tobacco infractions) and person or nonperson by the state Legislature. See K.S.A. 2016 Supp. 21-5102. By the nature of the penalty imposed, the nonexistent offense to which Pollman pleaded in 2011 was a felony and should be classified as such for criminal history purposes.

> "(a) A felony is a crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law.
>
> . . . .
>
> "(d) All other crimes are misdemeanors." K.S.A. 2016 Supp. 21-5102.

The district court imposed an underlying sentence on Pollman for discharge of a firearm at an unoccupied vehicle of 10 months in the custody of the Kansas Department of Corrections. Even though the offense was not classified by statute, the nature of its punishment, which Pollman does not challenge, classified it as a felony.

The relevant statute requires courts to consider and score unclassified felonies as nonperson crimes. K.S.A. 2016 Supp. 21-6810(d)(6) states: "Unless otherwise provided by law, unclassified felonies and misdemeanors, shall be considered and scored as nonperson crimes for the purpose of determining criminal history." Pollman's conviction was unclassified so it should have been scored as a nonperson crime.

Consistent with K.S.A. 2016 Supp. 21-6810(d)'s statutory mandate, K.S.A. 2016 Supp. 21-6807(c) provides the following rules for determining the crime severity of specified offenses.

> "(c) The provisions of this subsection shall be applicable with regard to ranking offenses according to the crime severity scale as provided in this section:

23

"(1) When considering an unranked offense in relation to the crime severity scale, the sentencing judge should refer to comparable offenses on the crime severity scale.

"(2) Except for off-grid felony crimes, which are classified as person felonies, all felony crimes omitted from the crime severity scale shall be considered nonperson felonies.

"(3) All unclassified felonies shall be scored as level 10 nonperson crimes." K.S.A. 2016 Supp. 21-6807(c).

The legal distinction between an "unranked" felony and an "unclassified" felony is not readily apparent in the statute, and the terms have not been defined by statute or caselaw. But for purposes of this appeal, it is unnecessary to determine whether Pollman's conviction was also "omitted" or "unranked" because application of any one of the three rules in K.S.A. 2016 Supp. 21-6807(c)(1), (2), or (3) results in the same criminal history rating for Pollman's 2011 conviction. We examine these below.

Under K.S.A. 2016 Supp. 21-6807(c)(1), a sentencing judge considering an unranked offense in relation to the crime severity scale, "should refer to comparable offenses on the crime severity scale." If we consider Pollman's 2011 offense to be an "unranked offense," as it appears to be, his offense of discharging a firearm at an unoccupied vehicle is comparable to criminal damage to property. Criminal damage to property in the amount of $1,000 to less than $25,000 was a severity level 9 nonperson felony at the time Pollman committed the offense. K.S.A. 21-3720(b)(2). Pollman was charged restitution in the amount of $4,278.72. Five-hundred dollars of that restitution is payable to a person listed as the victim of one of the dismissed criminal damage to property charges. The remaining $3,778.72 then necessarily pertains to the offense of conviction. Thus under K.S.A. 2016 Supp. 21-6807(c)(1), Pollman's 2011 conviction should be classified as a nonperson felony for criminal history purposes.

24

Under K.S.A. 2016 Supp. 21-6807(c)(2), Pollman's 2011 offense was a "felony crime[] omitted from the crime severity scale" so it "shall be considered [a] nonperson felon[y]." Similarly, under subsection (c)(3), Pollman's 2011 offense would be classified as a nonperson felony because "[a]ll unclassified felonies shall be scored as level 10 nonperson crimes." K.S.A. 2016 Supp. 21-6807(c)(3). Pollman's brief admits that his 2011 offense is "unclassified" and defines that term as "'not placed or belonging in a class'" (quoting Webster's New Collegiate Dictionary 1263). Pollman states "[b]y its plain language then, an unclassified crime would be any crime not otherwise placed within a class. Because [] Pollman's prior conviction was for a nonexistent crime, which had no classification, it is unclassified." We agree.

Consequently, the district court erroneously classified Pollman's 2011 conviction as a person felony in determining his criminal history score in the present case. When the 2011 conviction is properly classified as a nonperson felony, Pollman's criminal history score should have been determined to be an E.

C.     *The rule of lenity does not apply.*

Pollman's only other argument is that the rule of lenity applies. That rule requires a court to apply a reasonable reading of a statute in favor of a criminal defendant when the applicable language of a statute or statutes fosters a genuine ambiguity. *State v. Coman*, 294 Kan. 84, Syl. ¶ 5, 273 P.3d 701 (2012) ("Under the rule of lenity, criminal statutes must be strictly construed in favor of the defendant."); *State v. Thompson*, 287 Kan. 238, 249, 200 P.3d 22 (2009) (statutory silence or ambiguity construed in favor of defendant). Although the Legislature had not classified the offense for which Pollman was convicted in 2011, the criminal code is not silent or ambiguous as to classification of that offense. It instead guides us on how to classify unclassified, omitted, or unranked convictions, such as Pollman's. As a result, the rule of lenity does not apply.

25

CONCLUSION

Pollman's 2011 offense must be scored as a nonperson felony rather than as a person felony. We vacate Pollman's sentence and remand for resentencing.

* * *

ATCHESON, J., dissenting:  The majority today unleashes a bastard beast of plea bargaining that permits a prosecutor and defense lawyer to agree to a crime they make up, then designate as a felony or misdemeanor, and arbitrarily assign a severity level—as long as a district court consents. The beast, effectively a common-law crime, defies legal bounds:  It is contrary to the Kansas Criminal Code; it ignores controlling Kansas Supreme Court precedent; and it almost certainly violates the Kansas Constitution's separation of powers between the judicial and legislative branches of government. Ironically, this case could be decided one way or the other without the beast. Given my disagreement with both the result the majority reaches and the misbegotten way it goes about getting to that result, I dissent.

In 2011, Defendant Robert Kenton Pollman Jr. entered into an agreement to plead no contest to "crim[inal] discharge [of a] firearm at [an] unoccupied vehicle." No such offense appeared in the Kansas Criminal Code then and doesn't now. As part of the charade, Pollman's lawyer and the county attorney designated their invented crime as a severity level 8 person felony. For reasons I can't fathom, the Finney County District Court accepted the plea, thereby creating a common-law crime—one that exists by judicial declaration rather than legislative enactment. The district court later sentenced Pollman consistent with the plea agreement, and he has completed that sentence as far as we know.

26

Six years later, Pollman pleaded no contest to a drug crime (that does appear in the criminal code). And that is the case in front of us. For his only issue on appeal, Pollman has challenged how his 2011 conviction on the common-law offense of shooting at an unoccupied vehicle should be scored for criminal history purposes. And that is the question in front of us. Pollman is not trying to set aside the 2011 conviction. I am not sure he has a procedural vehicle to do so, even if he wanted to. But I am quite sure this case would not be it.

PLEA BARGAINING DOES NOT EXTEND TO COMMON-LAW CRIMES

It seems plain to me that Pollman could not have been and should not have been convicted of a common-law crime in 2011. In short, the district court had no business accepting a plea to an entirely made-up crime. The Kansas Criminal Code explicitly abolishes common-law crimes: "No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state . . . ." K.S.A. 2016 Supp. 21-5103(a). The prohibition governed Pollman's 2011 case and has been in place for eons. See K.S.A. 21-3102; *State v. Young*, 55 Kan. 349, 356, 40 P. 659 (1895). The legislative intent couldn't be much clearer. If conduct doesn't correspond to what is described in a section of the criminal code or elsewhere in the statute books, it isn't a crime. The district court violated that statutory directive in accepting Pollman's plea in 2011.

The Kansas Supreme Court has repeatedly recognized that "[t]here are no common law crimes in this state, and there can be no conviction except for such crimes as are defined by statute." *State v. Sexton*, 232 Kan. 539, Syl. ¶ 1, 657 P.2d 43 (1983); see *State v. Rodriguez*, 305 Kan. 1139, 1154, 390 P.3d 903 (2017) (recognizing rule stated in *Sexton*); *Young*, 55 Kan. at 356. That precedent is binding on district courts. So the district court should not have accepted Pollman's plea to a common-law crime in 2011 for that reason.

Finally, the Kansas Constitution allocates authority among the executive, legislative, and judicial branches of government. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 882-83, 179 P.3d 366 (2008) (recognizing separation of powers doctrine as "'inherent and integral'" to the fundamental tripartite forms of state and federal government and implicit in the division of authority among the legislative, executive, and judicial branches recognized in Kansas Constitution). With the abolition of common-law crimes, the judicial branch had no authority to proscribe particular conduct as criminal. That authority rests with the Legislature. As the *Rodriguez* court recently pointed out, "it is the Kansas Legislature that establishes what constitutes a criminal act in Kansas, not the courts." 305 Kan. at 1154. The concept is neither new nor stunning. See *Sexton*, 232 Kan. at 542 ("[A]ll crimes are established by legislative act."). By endorsing the 2011 plea bargain, the district court gave its imprimatur to a common-law crime and, in doing so, exceeded its constitutional authority by usurping a legislative function. See *State ex rel. Morrison*, 285 Kan. at 898 ("The separation of powers doctrine, therefore, prohibits either the executive or judicial branches from assuming the role of the legislature.").

To reiterate, the district court should not have accepted Pollman's plea to a common-law crime in 2011 and had an obligation to reject the proposed agreement. If there were some need to invoke a particular rule for the result, it would be this:

Plea agreements are treated as a species of contract. *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). The courts should not enforce contracts that are contrary to public policy. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, Syl. ¶ 11, 59 P.3d 1003 (2002). Public policy may be found in legislative enactments or constitutional doctrines. *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001) (public policy of state resides in "its constitution, its statutory enactments, and its judicial decisions"). The declaration of public policy in criminalizing particular conduct resides with the Legislature, subject to constitutional strictures.[1]

[1]We do not know why the district court accepted the plea in the 2011 case. The transcripts from the plea hearing and sentencing in that case are not in the record on appeal for this case. We have a journal entry of disposition, reflecting the entry of the plea. I presume at some point in the process the district court understood that discharging a firearm at an unoccupied vehicle was not criminalized in a Kansas statute. Whether the district court knew or didn't know, the plea was legally improper.

As I said, the question for us is how the 2011 conviction should be treated for criminal history purposes in this case. To resolve that issue, the majority arguably does not need to endorse the plea agreement and conviction as proper exercises of authority and could simply find that Pollman cannot now disavow the result he sought in that case. As I next explain, I disagree with even that sort of narrow conclusion. But I am more adamantly at odds with the majority's broad—and wholly unjustified—endorsement of plea agreements and convictions for common-law crimes. The beast arises from fallacies in the majority's treatment of plea bargaining and its muddled application of reasoning by analogy, a mainstay of judicial decision-making.

Because plea agreements for and convictions of common-law crimes are impermissible, they should not happen. A published decision to that effect from the Kansas Supreme Court at least in theory should slay the beast and end the practice. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014) (Court of Appeals duty bound to follow Supreme Court precedent); *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (same); *State v. Stadler*, No. 112,173, 2015 WL 4487059, at *6 (Kan. App. 2015) (unpublished opinion) ("The district court and this court are duty bound to follow Kansas Supreme Court precedent."). Until now, the court has not been called upon to address the precise issue, although the conclusion seems ineluctable for the reasons I have outlined. But precedent and the force of stare decisis create no more than an honor system in this circumstance. If the lawyers for the parties and the district court agree to a disposition of a case based on a plea to a common-law crime, no one has an incentive to complain and, thus, to appeal the result.[2]

[2]We have no particularly reliable gauge as to how common the practice may be. Pollman's 2011 case could be an isolated, and perhaps unique, instance of unwarranted creativity. But plea bargaining to common-law crimes may have been a recurrent phenomenon in some judicial districts or even across the state that has gone largely unnoticed in the absence of any appellate review. With today's published opinion, the practice almost certainly will become more common.

Appellate courts may impose transactional costs on improper practices to disincentivize them. For example, the Kansas Supreme Court requires the party benefiting from an erroneous jury instruction to demonstrate the absence of prejudice to an opposing party who has objected. See *Castleberry v. DeBrot*, 308 Kan. 791, 809, 424 P.3d 495 (2018). Similarly, the court imposes on the State the burden of proving a prosecutor's impermissible closing argument did not prejudice the defendant. See *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Plea bargaining for and resulting convictions based on common-law crimes represents another improper practice.

But there is no disincentive to improper plea bargaining that may be reliably imposed in the case in which it occurs precisely because everyone agrees to the impropriety. The appellate courts, therefore, have to exact some other transactional cost. Declining to consider such a conviction for criminal history purposes in a later criminal prosecution creates at least a modest penalty and ought to discourage plea bargains for common-law crimes. The cost, of course, falls on the State rather than the criminal defendant. But there can be no plea agreement without the State's approval. And the prosecution's ultimate duty is to advance a just result—a duty that can't really be squared with signing off on a plea agreement that violates public policy even though the agreement may confer some benefit on the defendant. See *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000) (prosecutorial duty). The district court's approval of such an agreement—at the behest of the prosecutor and the defendant—neither sanctifies nor sanitizes the result.

30

For that reason, I conclude Pollman's 2011 conviction should not be scored for criminal history purposes in this case because it derives from an impermissible plea agreement and rests on an unsanctioned common-law crime. I, therefore, would reverse and remand with directions that the district court resentence Pollman in this case using a criminal history category that excludes the 2011 conviction.[3]

[3]The change would be significant for Pollman in this case, and it would be for most defendants if the discarded conviction for a common-law crime had been dubbed a person felony. In this case, the district court placed Pollman in criminal history category C based on one person felony conviction (the 2011 case) and one nonperson felony. Based on the conviction in this case for attempted possession of methamphetamine, Pollman fell in a border box with a presumptive guidelines sentence of 28 to 32 months in prison. A border box effectively calls for presumptive incarceration. See K.S.A. 2016 Supp. 21-6805(d). If the 2011 conviction were discarded, Pollman would have been in criminal history category F based on two nonperson felonies with a guidelines sentence of 16 to 18 months incarceration and a presumption for probation.

MAJORITY ERRS IN RECOGNIZING PLEAS TO COMMON-LAW CRIMES

The majority mistakenly concludes a plea agreement for and conviction of a common-law crime must be legally permissible based on two pyramiding errors. First, the majority misunderstands the scope of the legal fictions tolerated in plea bargaining. Pertinent here, those fictions are limited to convictions for statutorily recognized crimes, consistent with K.S.A. 2016 Supp. 21-5103(a). With statutory crimes, the Legislature proscribes the wrongful conduct, designates the crime as a felony or misdemeanor, and prescribes the presumptive sentence in keeping with the recognized allocation of authority between the legislative and judicial branches. Second, the majority extracts the narrow statement of the holdings in cases affirming pleas to statutory crimes and then, without considering the governing factual circumstances, applies those holdings here to a plea involving a common-law crime—a legally significant and, in my view, controlling difference. That severance of factual predicate from legal holding conflicts with appropriate judicial reasoning by analogy from case precedent to new and different

31

circumstances. Doing so may create false analogies and can easily lead to erroneous outcomes, as has happened here. Finally, however, the majority essentially contradicts its own premise by treating Pollman's 2011 conviction as a nonperson felony more or less in keeping with the statutory framework rather than as a person felony consistent with the parties' and the district court's designation of their invented crime.

*Plea Bargaining in Kansas Does Not Contemplate Common-Law Crimes*

The criminal justice system depends on plea bargaining as a means of disposing of the vast majority of cases. Without those agreements and the resulting dispositions, the system would collapse from the sheer volume of trials and the time and resources they would consume. Plea bargains typically call for a defendant to plead guilty or no contest in exchange for the State agreeing to a reduction of the charged crimes to less serious crimes, the dismissal of some charged crimes, a recommendation to the district court for less than the maximum sentence, or some combination of those benefits.

Successful plea bargains often depend upon one or more legal fictions to arrive at deals mutually acceptable to the prosecution and the defense and tolerable to district courts. Legal fictions are strange creatures. They populate the law with conventions or understandings that aren't really true but are accepted because they smooth out processes that would otherwise be at least cumbersome and perhaps unworkable. A legal fiction has been defined as "[a]n assumption that something is true even though it may be untrue . . . to alter how a legal rule operates." Black's Law Dictionary 1031 (10th ed. 2014).

Plea bargaining regularly relies on three legal fictions. In the first fiction, the prosecutor and the defendant agree to a plea to an amended statutory crime that doesn't particularly fit the facts of what the State contends actually happened but carries a lesser punishment than the original charge. See, e.g., *State v. Wieland*, No. 114,900, 2017 WL 657999, at *3 (Kan. App.) (unpublished opinion) (defendant pleaded guilty to two counts

of attempting to possess child pornography, a form of sexual exploitation of a child violating K.S.A. 2012 Supp. 21-5510[a][2], when he actually had child pornography on his smartphone), *rev. denied* 306 Kan. 1331 (2017). The second fiction comes into play when the defendant pleads guilty to a lesser offense that amounts to a legal impossibility—typically an attempt to commit certain statutory crimes. The particular mental intent required for attempts cannot exist simultaneously with the particular mental state or mens rea for some crimes. That conflict prevents a defendant from truly having the state of mind necessary to be guilty of an attempt to commit those crimes, rendering such a charge a "legal impossibility." See, e.g., *McPherson v. State*, 38 Kan. App. 2d 276, 280, 163 P.3d 1257 (2007) (defendant properly permitted to plead to attempted unintentional second-degree murder even though crime requires mental state that cannot legally exist). Attempts typically are punished less severely than the completed crimes, so the defendant realizes a benefit. See K.S.A. 2018 Supp. 21-5301(c)(1). In the third fiction, a defendant pleads guilty to a statutory crime to accept an advantageous plea bargain while maintaining his or her innocence in what is commonly known as an *Alford* plea. See *State v. Case*, 289 Kan. 457, 460-61, 213 P.3d 429 (2009); see also *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Although those conventions may be legal fictions, the fiction extends only so far. They all involve dispositions resulting in convictions for statutory crimes. In other words, the crime to which the defendant pleads can be found in the Kansas Criminal Code or elsewhere in the statute books. Attempts are codified, as are aiding and abetting and criminal conspiracies. See K.S.A. 2018 Supp. 21-5210 (liability for aiding and abetting another in committing a crime); K.S.A. 2018 Supp. 21-5301 (liability for failed attempt to commit crime); K.S.A. 2018 Supp. 21-5302 (liability for agreement with another person to commit crime coupled with overt act in furtherance of agreement). So the pleas tie directly to what the Legislature has chosen to criminalize. In turn, the Legislature has designated the crimes of conviction as misdemeanors or felonies, their severity level, and their identification as person or nonperson offenses. None of that is supposed to be left to

the parties' invention. And all of those classifications matter. The severity level of a felony in combination with the defendant's criminal history category determines the presumptive guidelines sentence for a conviction. A defendant's criminal history, in turn, takes account of past convictions with greater weight given to felonies than misdemeanors and to person offenses over nonperson offenses.

Pollman's 2011 conviction has none of those attributes, since the prosecutor and the defense lawyer invented the crime of discharging a firearm at an unoccupied vehicle. *There is no such offense in the Kansas Criminal Code.* The lawyers arbitrarily characterized their invention as a felony and with equal arbitrariness and a dose of illogic designated it a severity level 8 person felony. Just how shooting at a vehicle with no occupants ought to be a person felony escapes me. See Kansas Sentencing Guidelines Desk Reference Manual 28 (2018 ed.) ("The 'person' designation generally refers to crimes that inflict, or could inflict harm to another person."). The Legislature, of course, had nothing to say about any of that. Neither the district courts nor the appellate courts ought to sign off on those legislatively unauthorized creations.

The majority pallidly points out that discharging a firearm at an unoccupied vehicle sounds kind of like some actual statutory crimes, such as discharging a firearm at an occupied vehicle—the charge the prosecutor originally filed against Pollman in 2011—or discharging a firearm at an unoccupied dwelling. See K.S.A. 21-4219 (now codified as K.S.A. 2018 Supp. 21-6308). Or criminal damage to property. See K.S.A. 2018 Supp. 21-5813. Or (maybe) discharging a firearm on the land of another without permission or from a public road or right-of-way. See K.S.A. 2018 Supp. 21-6308. While the similarity may be interesting, it does nothing to legitimize an otherwise illegitimate common-law crime. *Sexton*, 232 Kan. at 543 ("[A] criminal statute will not be 'extended by courts to embrace acts or conduct not clearly included within its prohibitions.'") (quoting *State v. Doyen*, 224 Kan. 482, 488, 580 P.2d 1351 [1978]).[4]

34

[4]I remain puzzled by why the prosecutor and defense lawyer handling Pollman's 2011 case felt the need to venture into the realm of common-law crimes to work out a disposition of the original offense of discharge of a firearm at an occupied vehicle, a severity level 7 person felony violation of K.S.A. 21-4219(b). Neither of those lawyers has been involved in this case, so we haven't had the opportunity to ask them. A plea bargain to the statutory crime of attempted discharge of a firearm would have been a severity level 9 person felony. See K.S.A. 2010 Supp. 21-3301. It would have had a slightly shorter presumptive guidelines sentence (7 to 9 months) than the invented common-law crime (9 to 11 months) based on Pollman's criminal history in 2011.

The extraordinary rule the majority propounds today limits plea bargaining only by the imagination of prosecutors, defense lawyers, and compliant district courts. We can and should anticipate convictions for strange crimes. For example, a prosecutor with a witness problem in a robbery might plead the defendant to felony jaywalking as a severity level 8 nonperson offense. Jaywalking actually is a traffic infraction, but in no circumstance could it be a felony. See K.S.A. 8-1534(d); K.S.A. 2018 Supp. 8-2118(c). In another problem case, that prosecutor could reduce a severity level 4 aggravated battery to "excessive force self-defense"—a severity level 9 person felony entailing the common-law crime of using more nonlethal force than necessary in circumstances permitting self-defense. In some other judicial district, excessive force self-defense could be a severity level 7 person felony. Maybe it turns into a misdemeanor in yet another judicial district.

Prosecutors, of course, have tremendous discretion in their charging decisions and can engineer plea agreements to reduced statutory charges that differ markedly from what they originally file against a defendant with concomitant variances in punishment and implications for criminal history determinations. But those pleas conform to the legislative blueprint of what constitutes criminal conduct. Pleas to invented common-law crimes fall outside that blueprint and lack statutory and constitutional legitimacy. Any sense of consistency gets lost fast in a world of common-law crimes.

35

The majority doesn't really consider how a conviction for a common-law crime ought to be treated for various collateral purposes apart from scoring criminal histories. For example, a common-law felony involving some sort of sexual assault—say, defilement of a minor—might not require a defendant to comply with the Kansas Offender Registration Act, K.S.A. 22-4901 et seq. The crimes triggering registration and reporting obligations are for the most part keyed to specific statutory offenses. See K.S.A. 2018 Supp. 22-4902(c). The catch-all provisions likely wouldn't apply. K.S.A. 2018 Supp. 22-4902(c)(16), (c)(18). Under K.S.A. 2018 Supp. 22-4902(c)(16), the defendant must have been convicted of "an offense . . . comparable to" one of the designated statutory crimes. The Legislature presumably intended to reach similar convictions from other jurisdictions rather than a conviction for a common-law crime in a Kansas court—something it sought to abolish by eliminating common-law crimes. The other catch-all in K.S.A. 2018 Supp. 22-4902(c)(18) requires a determination beyond a reasonable doubt that a particular act was "sexually motivated[,]" meaning "the defendant committed the crime" for his or her sexual gratification. The subsection presupposes the commission of a crime, a reference reasonably confined to what the Legislature itself has criminalized.

Pollman's 2011 conviction might have required him to register as a violent offender. See K.S.A. 2011 Supp. 22-4902(e)(2) (registration required for person felony conviction on or after July 1, 2006, if district court makes finding deadly weapon used). The record is unclear whether the district court considered or imposed KORA registration. A firearm fairly would be considered a deadly weapon. See Black's Law Dictionary 1827 (10th ed. 2014) (term "deadly weapon" includes "[a]ny firearm or other device . . . [that] is calculated or likely to produce death"). The majority's conclusion today muddies the issue, since it says the 2011 common-law conviction should be treated as a nonperson felony for criminal history purposes—a peculiar twist I discuss later. But how it is scored as part of a criminal history wouldn't necessarily alter the underlying conviction itself as a person felony, since that's what the parties invented and the district

36

court approved, assuming (as the majority holds) they could walk into the world of common-law crimes at all.

Similar uncertainty pervades how a conviction for a common-law crime invented as a felony ought to be treated for purposes of civil disabilities, such as the prohibitions on voting and holding public office, see K.S.A. 2018 Supp. 21-6613, and, perhaps of lesser importance, for purposes of expungement, see K.S.A. 2018 Supp. 21-6614. The Legislature has also determined that persons convicted of felonies may be denied licenses to work in various occupations. See, e.g., K.S.A. 2018 Supp. 2-2449(a) (pest control services); K.S.A. 2018 Supp. 47-830(e) (veterinary medicine); K.S.A. 65-1820a(a)(12) (barbering based on person felony); K.S.A. 65-6615(a)(2) (drug or alcohol addiction counselor). The Legislature presumably has made a studied determination of the occupations that ought to be closed to felons as a matter of public policy and has no intention of delegating the authority to identify the crimes triggering that detriment to prosecutors, defense lawyers, and district court judges manufacturing common-law offenses.

I weigh all of those considerations strongly against the idea the Legislature intended to permit plea bargaining to anything other than statutory crimes.

*Majority Misapplies Judicial Reasoning by Analogy*

In recognizing plea bargains and resulting convictions for common-law crimes, the majority relies on cases involving statutory crimes and misapplies their holdings by failing to recognize that factual circumstance as integral to those holdings. What the majority has done short-circuits judicial reasoning by analogy from case precedent to new situations that are materially different. The majority fails to acknowledge, let alone account for, the striking difference between statutory crimes and common-law crimes and, thus, constructs a false analogy to reach an erroneous result.

37

The majority relies heavily on the *McPherson* decision and the comparable holding in *Spencer v. State*, 24 Kan. App. 2d 125, 942 P.2d 646 (1997), *aff'd on other grounds* 264 Kan. 4, 954 P.2d 1088 (1998). So I start there to illustrate the problem with the majority's reasoning. McPherson filed a motion under K.S.A. 60-1507 attacking his earlier plea to attempted unintentional second-degree murder on the grounds no such crime actually could be committed. When McPherson entered his plea an attempt required the defendant to have the specific intent to commit the underlying crime. But that form of second-degree murder entailed an unintentional killing. The Kansas Supreme Court had held in *State v. Shannon*, 258 Kan. 425, 429, 905 P.2d 649 (1995), that a person could not form the specific mental intent to commit an unintentional killing, so the crime of attempted unintentional second-degree murder amounted to a legal impossibility. McPherson argued in his motion that his plea and conviction ought to be set aside for that reason.

This court held that McPherson should be bound to the result because: (1) He had been charged with attempted first-degree murder, a legally possible crime; (2) he received a benefit in the plea bargain to the reduced charge; and (3) he voluntarily and knowingly entered into the agreement. *McPherson*, 38 Kan. App. 2d at 284. That's the pertinent holding and rule from *McPherson*. The crime at issue was attempted unintentional second-degree murder. Both unintentional second-degree murder and attempts were (and are) codified, statutory crimes. The Legislature enacted them consistent with its declaration that no conduct should be considered a crime if not included in the criminal code or elsewhere in the Kansas statutes. See K.S.A. 2016 Supp. 21-5103(a); K.S.A. 21-3102. So *McPherson* had nothing to do with a plea to a common-law crime—the factual circumstance here. And the court did not mention, let alone presume to consider or decide, the efficacy of a plea to a common-law crime.

Given the legislative banishment of common-law crimes, the holding of *McPherson* cannot simply be lifted from that case and applied to this one without some

38

compelling explanation of why it should be considered analogous. Ultimately, I do not see how *McPherson* can be treated as comparable and, thus, guiding authority for the outcome here, given the marked differences between legislatively enacted statutory crimes and legislatively banished common-law crimes.

In applying the holdings of cases resting on judicially made rules rather than statutes, such as the ruling in *McPherson*, a court cannot simply detach those holdings from their factual underpinnings. *Illinois v. Lidster*, 540 U.S. 419, 424, 124 S. Ct. 885, 157 L. Ed. 2d 843 (2004) (Language in judicial opinions should be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering."); *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33, 65 S. Ct. 165, 89 L. Ed. 118 (1944). In *Armour*, Justice Robert Jackson admonished lawyers that "words of our opinions are to be read in light of the facts of the case under discussion." 323 U.S. at 133. And he cautioned: "General expressions transposed to other facts are often misleading." 323 U.S. at 133. The essential facts presented in a given case, then, reflect a critical part of any resulting judicial rule. When a court weighs the applicability of such a rule to a new set of facts, it should reason by analogy to determine the appropriateness of the rule to those circumstances. That is, the court should ask whether the significant facts of the case at hand are sufficiently similar to the case or cases in which the rule has been developed and applied to warrant the same treatment. *United States v. Standefer*, 610 F.2d 1076, 1100 (3d Cir. 1979) (Aldisert, J., concurring in part, dissenting in part) ("Recognition of the differences between the material facts of this case and those implicated in every case cited in support of the result reached by the majority leads me to conclude that the cases do not authoritatively support the majority's result."). If the facts are materially different, the rule may be inapplicable or applicable only in some form modified to account for those differences. Through that process, judge-made law develops more or less by accretion. See Stone, *The Common Law in the United States*, 50 Harv. L. Rev. 4, 5 (1936).

Chief Justice Harlan F. Stone explained development of precedent this way: "Decision has drawn its inspiration and its strength from the very facts which frame the issues for decision. Once made, the decision controls the future judgments of courts in like or analogous cases." 50 Harv. L. Rev. at 6. A decade later, Professor Edward H. Levi described that methodology as "reasoning by example." Levi, *An Introduction to Legal Reasoning*, 15 U. Chi. L. Rev. 501, 501 (1948). He explained the process: "[S]imilarity is seen between cases; next the rule of law inherent in the first case is announced; then the rule of law is made applicable to the second case." 15 U. Chi. L. Rev. at 501-02. In that process, "the scope of a rule of law, and therefore its meaning, depends upon a determination of what facts will be considered similar to those present when the rule was first announced." 15 U. Chi. L. Rev. at 502. More recently, Professor Cass R. Sunstein noted that reasoning by analogy continues to characterize judicial decision-making and legal advocacy. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 741 (1993). He offers a similar description of the analogical method. 106 Harv. L. Rev. at 745-46.

Advocates, thus, typically fashion appellate arguments through a like process of analogy. Each side cites cases that it contends are factually and legally comparable to the circumstances before the court and presses for application of the holdings in those cases and, therefore, a like outcome. See *United States v. Strickland*, 144 F.3d 412, 416 & n.4 (6th Cir. 1998). The advocates also attempt to distinguish their adversaries' case authority as less nearly analogous and ultimately inapplicable. The court replicates that process in sorting through the dueling case authority to arrive at a ruling. See Levi, 15 U. Chi. L. Rev. at 504.

Here, the majority abbreviates that process of reasoning-by-analogy and reflexively invokes the rule from *McPherson* without accounting for the compelling factual difference between that case and this one. The difference—rooted in legislative abandonment of common-law crimes—requires a carefully reasoned rationale to warrant even considering the *McPherson* rule here. See Sunstein, 106 Harv. L. Rev. at 757

("[A]nalogical reasoning can go wrong when . . . some similarities between two cases are deemed decisive with insufficient investigation of relevant differences."). None is forthcoming. By truncating that process, the majority effectively expands a rule to a new and materially different situation for which it is neither obviously required by precedent nor irrefutably a proper approach for the new. The majority purports to do no more than follow precedent, but its opinion actually expands that precedent to reach an unwarranted and impermissible outcome.

The other Kansas appellate cases the majority cites don't fill in the factual and legal gap between the reasoning and holding in *McPherson* and the circumstances here. In *Spencer*, the court declined to set aside a plea to and conviction for attempted aggravated assault—a crime it characterized as "nonexistent" based on *State v. Martinez*, 20 Kan. App. 2d 824, 834, 893 P.2d 267 (1995), which reasoned that a defendant could not be guilty of an attempted assault if the victim never perceived the threat and, thus, was never placed in apprehension of bodily harm. 24 Kan. App. 2d at 126, 129. The court found the plea to be appropriate because Spencer had been charged with aggravated battery, realized a benefit from pleading to a reduced charge, and did so knowingly and voluntarily, reflecting the same considerations the *McPherson* court later endorsed. 24 Kan. App. 2d at 129. But, as with *McPherson*, the plea in *Spencer* rested on a statutory crime (aggravated assault) and a statutorily recognized principle of criminal liability (attempt). The court didn't mention, let alone discuss, the ramifications of a plea to a common-law crime. On review, the Kansas Supreme Court held that attempted aggravated assault as then defined was, in fact, a crime and affirmed the denial of relief to Spencer for that reason, rejecting the rationale underlying this court's opinions in *Spencer* and *Martinez*. *Spencer*, 264 Kan. at 4-5. As a result, the Kansas Supreme Court didn't address the boundaries of appropriately plea-bargained offenses and convictions.

The majority also relies on *Easterwood v. State*, 273 Kan. 361, 44 P.3d 1209 (2002), although it is far afield. Easterwood pleaded guilty to felony murder with a

41

favorable sentencing recommendation from the State along with the dismissal of other felony charges. The factual circumstances involved an armed robbery that went awry. Law enforcement officers arrived as the holdup was going on and fatally shot Easterwood's partner after he shot at them. That was the killing underlying the felony-murder charge.

Felony murder is a statutory crime, and at the time Easterwood pleaded, those factual circumstances were at least consistent with a conviction. Nearly five years later, the Kansas Supreme Court held that felony murder does not apply when the death of a participant in the predicate crime results from the actions of law enforcement officers or a resisting victim. See *State v. Sophophone*, 270 Kan. 703, 19 P.3d 70 (2001) (law enforcement actions causing death); *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001) (victim actions causing death), *abrogated on other grounds by State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2008). Based in part on those decisions, Easterwood sought habeas corpus relief under K.S.A. 60-1507 to set aside his plea and conviction. The court held that Easterwood's plea conformed to the law governing felony murder when he entered it. He could have challenged the felony-murder rule then but chose not to in preference to the favorable plea deal. The court, therefore, declined to allow Easterwood to collaterally attack the resulting conviction years later based on an intervening change in the law. 273 Kan. at 382-84.

As with *Spencer* and *McPherson*, the *Easterwood* decision has nothing to say about pleas to and convictions for common-law crimes. The court most certainly did not condone the practice of prosecutors, defense lawyers, and district courts inventing crimes to dispose of cases. The decision neither directly nor indirectly supports the rule the majority announces. And it does not preclude the transactional cost I would impose to discourage what actually amounts to an improper usurpation of legislative authority.

42

The out-of-state cases the majority cites as a backstop for its peculiar use of common-law crimes in plea bargaining are no more apt than *Easterwood*, *Spencer*, and *McPherson*. See *People v. Myrieckes*, 315 Ill. App. 3d 478, 485, 734 N.E.2d 188 (2000) (court held defendant cannot challenge on appeal sufficiency of evidence to support voluntary plea to statutory crime and recognized general proposition without elaboration that defendant may plead to "nonexistent crime"); *People v. Genes*, 58 Mich. App. 108, 109-12, 227 N.W.2d 241 (1975) (upholding plea to attempted manslaughter, a statutory crime, even though record showed completed crime and mental state for attempt to commit involuntary manslaughter legally impossible); *People v. Foster*, 19 N.Y.2d 150, 152-53, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967) (upholding conviction on plea to attempted manslaughter in second degree, a statutory crime, although mental state for attempt may be logically inconsistent with mental state for completed crime); *People v. Griffin*, 7 N.Y.2d 511, 516, 199 N.Y.S.2d 674, 166 N.E.2d 684 (1960) (defendant properly allowed to plead to attempted assault in second degree, a statutory crime, that differed factually from more serious crime originally charged, although outcome may be considered "a hypothetical situation without objective [factual] basis"); *People v. Guishard*, 15 A.D.3d 731, 732, 789 N.Y.S.2d 332 (N.Y. App. Div. 2005) (upholding conviction on plea to attempted assault in the first degree, a statutory crime, although attempt deemed legal impossibility); *People v. Barker*, 221 A.D.2d 1018, 635 N.Y.S.2d 383 (N.Y. App. Div. 1995) (same, plea to attempted manslaughter in the first degree); *People v. Castro*, 44 A.D.2d 808, 808, 356 N.Y.S.2d 49 (N.Y. App. Div. 1974) (rejecting challenge to sufficiency of defendant's factual admission in support of plea to voluntary manslaughter in first degree, a statutory crime, and noting in dicta without cited authority defendant may plead to "hypothetical crime [that] has no elements"), *aff'd* 339 N.E.2d 620 (N.Y. 1975).

As a generic or abstract legal statement, the bare holding in *McPherson* arguably would fit here only because the opinion doesn't explicitly link the holding itself to statutory crimes or explicitly exclude common-law crimes. But a case holding can't

properly be applied by rote in that way precisely because the material facts necessarily inform the scope of the rule. The holdings in *McPherson*, *Spencer*, and the other cases all deal with statutory crimes without considering common-law crimes. Given the doubtful viability of common-law crimes in Kansas, there is no good reason to presume the *McPherson* court intended to permit—or even considered—what the majority does today. Absent a compelling articulation of why *McPherson* and the other cases are sufficiently analogous to plea bargaining for common-law crimes, they offer no obviously sound analytical support for the majority's foray into what looks like unknown (and legally dangerous) territory. The majority, then, simply ignores a fundamental difference between those cases and this one that render them inapposite.[5]

[5] The *McPherson* decision and the other cases are also distinguishable in that those defendants were trying to set aside their convictions. Pollman isn't challenging his 2011 conviction, only how it should be scored for criminal history purposes in this case. We have no authority in this case to vacate the 2011 conviction even if we were disposed to do so. Although the district court should never have accepted Pollman's plea to a common-law crime in 2011, the conviction itself may fall in the category of what's done is done. By the same token, however, we do have the authority to say how the 2011 conviction should be treated in determining Pollman's criminal history in this case. The illegitimate foundation of the conviction in a statutorily unrecognized common-law crime requires that we discount it.

*Majority's Coda of Contradiction*

In the coda to its opinion, the majority finds the common-law crime of discharging a firearm at an unoccupied vehicle must be treated as an unclassified, omitted, or unranked felony under K.S.A. 2016 Supp. 21-6807(c) and, therefore, should be scored as a nonperson offense in determining Pollman's criminal history in this case. That conclusion, however, ostensibly endorses legislative regulation of a conviction for a common-law crime. So it conflicts with the majority's premise that plea bargains to common-law crimes should be allowed in derogation of the Legislature's abolishment of those crimes. Those two themes are, at the very least, difficult to reconcile into an

44

entirely coherent approach to plea bargaining to common-law crimes—a dissonance that suggests jurisprudential mistake.

The majority first says pleas to and convictions for common-law crimes are not among the convictions excluded from criminal history determinations in K.S.A. 2016 Supp. 21-6810(d), which outlines the treatment of various categories of convictions. Although that's true, K.S.A. 2016 Supp. 21-6810 operates within the overarching legislative directive in K.S.A. 2016 Supp. 21-5103(a) that crimes are limited to conduct criminalized in the Kansas Criminal Code or in other statutes. And, in turn, only conduct codified as such can result in convictions. By legislative design, K.S.A. 2016 Supp. 21-6810 deals only with convictions for statutory crimes. Common-law crimes and convictions logically go unmentioned in K.S.A. 2016 Supp. 21-6810 because the Legislature has abolished them. No need or good purpose would be served in explicitly excluding something that doesn't exist. The majority ignores that impediment and proceeds to compound its illogic.

Under the 2011 plea agreement, the prosecutor and Pollman's lawyer treated their invented common-law crime as a severity level 8 person felony. The district court accepted that invention and imposed a guidelines sentence consistent with a severity level 8 felony. So the punishment range was driven by that treatment coupled with Pollman's criminal history in 2011.

The majority then says the 2011 common-law conviction is properly considered a felony because the penalty entailed a term of incarceration in a state prison and, thus, met the statutory definition of a felony in K.S.A. 2016 Supp. 21-5102(a). To get there, the majority must give legal effect to the decision of the parties and the district court in ascribing some severity level to the crime, thereby making it a felony. If the ascription were discarded, discharging a firearm at an unoccupied vehicle would carry no defined penalty. That would make it a misdemeanor under the catch-all in K.S.A. 2016 Supp. 21-

45

5102(d) for criminal conduct not otherwise classified as a felony, a traffic infraction, or a cigarette or tobacco infraction, and, in turn, an unclassified misdemeanor under K.S.A. 2016 Supp. 21-6602(a)(4). It would be scored as a nonperson misdemeanor. K.S.A. 2016 Supp. 21-6810(d)(6).

But the majority then retreats from accepting the particular designation the parties and the district court gave discharging a firearm at an unoccupied vehicle as a person offense rather than a nonperson offense and as a severity level 8 offense. The majority reasons that the common-law crime has been "'omitted from the crime severity scale'" and should be "'considered [a] nonperson felon[y]'" under K.S.A. 2016 Supp. 21-6807(c)(2). Slip op. at 25. This abrupt about-face is mystifying. The parties and the district court gave it a severity level on the scale. The Legislature hasn't—it doesn't recognize discharging a firearm at an unoccupied vehicle as a crime at all. But if the parties and the district court have some sort of inherent authority to ignore K.S.A. 2016 Supp. 21-5103(a) to invent a common-law crime for a plea bargain, why doesn't that authority similarly permit them to ignore K.S.A. 2016 Supp. 21-6807(c)(2) to assign their invention a particular severity level or to treat it as a person felony? And if they can't assign a severity level, by what authority do they get to declare their invention a felony at all—a declaration the majority accepts without question or reservation?

It seems to me the majority's plea-bargaining beast requires unwavering allegiance. If the parties and the district court can make up crimes for plea-bargained convictions as the majority erroneously posits, they ought to be able to designate them as person or nonperson offenses and assign a felony the severity level they choose. I don't see how fealty to the beast stops at simply naming the crime and treating it as some generic felony. Or examining this thing from the legislative perspective, either the statutory scheme for criminalizing conduct and punishing crimes governs or it doesn't. There is no halfway.

The majority's beast is both demanding and messy. I dissent from its creation.